# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CYNTHIA RICHARDS-DONALD and MICHELLE DEPRIMA, individually and on behalf of a class of all other persons similarly situated, and on behalf of the Teachers Insurance and Annuity Association of America Code Section 401(k) Plan and the Teachers Insurance and Annuity Association of America Retirement Plan,<br><br>Plaintiffs,<br><br>v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA; TIAA PLAN INVESTMENT REVIEW COMMITTEE; OTHA "SKIP" SPRIGGS; DERMOT O'BRIEN; PAMELA ATKINS; SUSAN COLLINS; WILLIAM RIEGEL; JOSH SHAMANSKY; ROBERT WEINMAN; JAYESH BHANSALI; DAVID DUNNE; PHIL GOFF; EDWARD MOSLANDER; PHILLIP ROLLOCK; ELIZABETH GIBSON; HARRY KLARISTENFELD; ANGELA KYLE; and MARTIN SNOW,<br><br>Defendants. | Civ. A. No. 15-cv-08040-PKC<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)** |

## I.   INTRODUCTION

1.      Plaintiffs Cynthia Richards-Donald and Michelle DePrima ("Plaintiffs"),

individually and on behalf of a class of similarly situated participants in the Teachers Insurance

and Annuity Association of America Code Section 401(k) Plan ("401(k) Plan") and/or the

Teachers Insurance and Annuity Association of America Retirement Plan ("Retirement Plan")

(together, the "Plans"), and on behalf of the Plans, bring this action for breach of fiduciary duty

and prohibited transactions under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), against Teachers Insurance and Annuity Association of America ("TIAA"), TIAA Plan Investment Review Committee ("Committee"), TIAA Executive Vice President and Chief Human Resources Officer Otha "Skip" Spriggs, former TIAA Executive Vice President and Chief Human Resources Officer Dermot O'Brien, and current and former Committee members Pamela Atkins, Susan Collins, William Riegel, Josh Shamansky, Robert Weinman, Jayesh Bhansali, David Dunne, Phil Goff, Edward Moslander, Phillip Rollock, Elizabeth Gibson, Harry Klaristenfeld, Angela Kyle, and Martine Snow (collectively, "Defendants").

2.      Plaintiffs bring this action by and through their undersigned attorneys based upon their personal knowledge and information obtained through counsel's investigation.  Plaintiffs anticipate that discovery will uncover further substantial support for the allegations in this First Amended Complaint.

## II.  NATURE OF THE ACTION

3.      The ERISA fiduciary obligations of retirement plan fiduciaries to the participants and beneficiaries of a plan are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598, 602 (8th Cir. 2009).

4.      When selecting investments for a retirement plan, plan fiduciaries are required to: perform with undivided loyalty; act prudently; and defray reasonable plan expenses.  ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

5.      ERISA also prohibits certain transactions and arrangements that have a high potential for abuse.  Thus ERISA prohibits a fiduciary from causing a plan to transact with a

party in interest, such as the plan sponsor, and prohibits plan fiduciaries from causing plan transactions for the benefit of themselves or others.  ERISA § 406(a)-(b), 29 U.S.C. § 1106(a)-(b).

6.       Defendants, who are or were in the Class Period fiduciaries of the Plans designated under the Plans' governing documents to carry out the duties of Plan Administrator, have violated their fiduciary duties and engaged in prohibited transactions with assets of the Plans.

7.       Plaintiffs' First Claim for Relief alleges that TIAA, the Committee, and the individual Committee members during the Class Period were responsible for selecting, monitoring, and removing the investments in the Plans.  Each of the individual Defendants was an officer or employee of TIAA or an affiliated entity.  Instead of acting for the exclusive benefit of the Plans and their participants and beneficiaries with respect to managing the Plans' assets, these Defendants acted for the benefit of TIAA, forcing the Plans exclusively into investments managed by TIAA or an affiliated entity, which charged excessive fees that benefited TIAA.  In 2013, for example, all of the Plans' investment options were managed by TIAA or an affiliate, and the expenses paid by the Retirement Plan were approximately 19 basis points higher than those of the typical defined contribution 401(k) plan with more than one billion dollars in assets, and the expenses paid by the 401(k) Plan were approximately 22 basis points higher.  TIAA has profited handsomely from these arrangements, earning tens of millions of dollars in fees during the Class Period.  Thus the investment decisions of TIAA, the Committee and its individual members breached their fiduciary duties under ERISA.

8.       Plaintiffs' Second Claim for Relief alleges that the investment decisions made by TIAA, the Committee, and the Committee members caused prohibited transactions during the

Class Period.  Each time the Plans paid fees to TIAA in connection with the Plans' investment in a TIAA-affiliated investment option, these Defendants caused the Plans to engage in a prohibited transaction under ERISA.  Specifically, each time the Plans paid fees to a TIAA-affiliated investment manager the Plans engaged in a transaction prohibited by ERISA § 406(a), which prohibits Defendants from causing the Plans to transact with the plan sponsor, TIAA, or any of its affiliates.  Each time the Plans paid fees to a TIAA-affiliated investment manager, the Plans engaged in a transaction prohibited by ERISA § 406(b), which prohibits Defendants from causing the Plans to engage in a transaction benefiting a person, here TIAA and its affiliates, whose interests are adverse to the interests of the Plans and their participants and beneficiaries, and prohibits TIAA from dealing with Plan assets in its own interest or for its own account.

9.      Plaintiffs' Third Claim for Relief alleges that TIAA, Defendant Spriggs, and Defendant O'Brien were responsible for selecting, monitoring, and removing the Recordkeeper for the Plans.  Each of the Executive Vice Presidents for Human Resources was an officer or employee of TIAA or an affiliated entity.  Instead of acting for the exclusive benefit of the Plans and their participants and beneficiaries with respect to spending the Plans' assets, these Defendants acted for the benefit of TIAA, hiring TIAA to be the Recordkeeper, which charged excessive fees that benefited itself.  TIAA has profited handsomely from these arrangements, earning millions of dollars in fees during the Class Period.  Thus these Defendants' appointment and retention decisions breached their fiduciary duties under ERISA.

10.     Plaintiffs' Fourth Claim for Relief alleges that the decision to engage TIAA as Recordkeeper made by TIAA, Defendant Spriggs, and Defendant O'Brien caused prohibited transactions during the Class Period.  Each time the Plans paid fees to TIAA in connection with such services, these Defendants caused the Plans to engage in a prohibited transaction under

ERISA.  Specifically, the Plans engaged in transactions prohibited by ERISA § 406(a), which prohibits Defendants from causing the Plans to transact with the plan sponsor, TIAA, or any of its affiliates.  Further, the Plans engaged in transactions prohibited by ERISA § 406(b), which prohibits Defendants from causing the Plans to engage in a transaction benefiting a person, here TIAA and its affiliates, whose interests are adverse to the interests of the Plans and their participants and beneficiaries, and prohibits TIAA from dealing with Plan assets in its own interest or for its own account.

11.     This is a civil enforcement action under ERISA, and in particular under ERISA §§ 404, 406, 409, and 502(a)(2), 29 U.S.C. §§ 1104, 1106, 1109, and 1132(a)(2).

12.     Plaintiffs bring this action on behalf of the Plans for losses to the Plans and for disgorgement of unlawful fees, expenses, and profits taken by Defendants, and to obtain such further equitable or remedial relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

13.     This class action is brought on behalf of participants in the Plans who participated from October 14, 2009 through the present (the "Class Period").

### III.  JURISDICTION AND VENUE

14.     **Subject Matter Jurisdiction.**  This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to ERISA § 502(e)(1), 29 U.S.C. §1132(e)(1), which provides for federal jurisdiction of civil actions brought under Title I of ERISA.

15.     **Personal Jurisdiction.**  This court has personal jurisdiction over Defendants because they reside and/or transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C.

§ 1132(e)(2), and the Plans are and were administered in this District and the breaches of ERISA took place herein.  This Court also has personal jurisdiction over Defendants pursuant to Fed. R Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in New York.

16.     **Venue.**  Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plans are and were administered in New York, New York, within this District, the breaches of ERISA took place in this District, and/or a Defendant resides or may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because a defendant resides and/or does business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## IV. PARTIES

17.     Plaintiff Cynthia Richards-Donald is a resident of Charlotte, North Carolina.  She participated in the Plans during the Class Period.

18.     Plaintiff Michelle DePrima is a resident of Olathe, Kansas.  She participated in the Plans during the Class Period.

19.     Plaintiffs' individual accounts in the Plans were invested in various investment options offered under the Plans' investment menu in the Class Period.  Plaintiffs were not provided any information regarding the substance of deliberations, if any, of Defendants concerning the Plans' menu of investment options or selection of service providers during the Class Period.  Plaintiffs otherwise had no knowledge of the substance of the deliberations, or of the nature of the investments they selected in the Plans beyond what was provided to them by the Plans.  Plaintiffs discovered their claims shortly before commencing this action.

20.     Defendant Teachers Insurance and Annuity Association of America ("TIAA")—a company that provides life insurance and retirement annuities—was established in 1918 as a legal reserve life insurance company under the insurance laws of the State of New York.  Its principal place of business is New York, New York.  TIAA is the Plan Sponsor, Plan Administrator, Recordkeeper, Named Fiduciary, and together with College Retirement Equities Fund ("CREF"), the insurance company issuer of annuity contracts to the Plans.

21.     CREF—which has been described as a "companion organization to TIAA" and a "sister company to TIAA"—is a registered investment company that issues variable annuity contracts.

22.     TIAA and CREF have formed the TIAA-CREF organization, one of the largest retirement systems in the U.S. based on assets under management.  The TIAA-CREF organization provides financial services including retirement annuities, mutual funds, insurance coverage, trust services, and other services.

23.     Defendant TIAA Plan Investment Review Committee ("Committee") is designated under the Plans to carry out certain fiduciary responsibilities for TIAA in the company's role as Plan Administrator, including "choosing the investment options that will be available as Accumulation Accounts under the Plan and Trust."

24.     Under the Plans the TIAA "Executive Vice President in charge of Human Resources" is designated to carry out certain specified fiduciary responsibilities for TIAA in the company's role as Plan Administrator, and more broadly to "exercise such authority and responsibility as it deems appropriate in order to comply with ERISA and governmental regulations issued thereunder relating to . . . [a]ny other actions required by ERISA or the Plan."

25.     Defendant Otha "Skip" Spriggs is Executive Vice President and Chief Human Resources Officer at TIAA.  Mr. Spriggs joined TIAA in 2012.

26.     Defendant Dermot O'Brien was Executive Vice President and Chief Human Resources Officer at TIAA in the Class Period.  Mr. O'Brien served for nine years, until leaving TIAA in 2012.

27.     Defendant Pamela Atkins is a current member of the TIAA Plan Investment Review Committee ("Committee"). She is also Senior Managing Director – Head of Credit Risk Management at TIAA.

28.     Defendant Susan Collins is a current member of the Committee.  She is also Vice President and Senior Actuary at TIAA.

29.     Defendant William Riegel is a current member of the Committee.  He is also Chief Investment Manager of TIAA Asset Management - Head of Equities and the former chair of the TIAA Plan Investment Review Committee.

30.     Defendant Josh Shamansky is a current member of the Committee.  He is also the current chair of the Committee and Senior Vice President – Total Rewards.

31.     Defendant Robert Weinman is a current member of the Committee.  He is also the Vice President – Head of Employee Benefits.

32.     Defendant Jayesh Bhansaili is a former member of the Committee, serving on the Committee during the Class Period.  He currently serves as Managing Director, Head of Global Derivatives and Quantitative Portfolio Management at TIAA.

33.     Defendant David Dunne is a former member of the Committee, serving on the Committee during the Class Period.  He currently serves as Senior Managing Director, Individual Retail Business & Chief Data Officer at TIAA.

34.     Defendant Phil Goff is a former member of the Committee, serving on the Committee during the Class Period.  He currently serves as Corporate Controller at TIAA.

35.     Defendant Edward Moslander is a former member of the Committee, serving on the Committee during the Class Period.  He currently serves as Head of Institutional Client Services at TIAA.

36.     Defendant Phillip Rollock is a former member of the Committee, serving on the Committee during the Class Period.  He currently serves as Senior Vice President and Corporate Secretary at TIAA.

37.     Defendant Elizabeth Gibson is a former member of the Committee, serving on the Committee during the Class Period.  She is no longer employed by TIAA.  When employed by TIAA, she was Senior Vice President of Corporate Financial Planning and Analysis at TIAA.

38.     Defendant Harry Klaristenfeld is a former member of the Committee, serving on the Committee during the Class Period.  He is no longer employed by TIAA.  When employed by TIAA, he was Chief Actuary, Senior Managing Director and Chief Strategy Officer.

39.     Defendant Angela Kyle is a former member of the Committee, serving on the Committee during the Class Period.  She is no longer employed by TIAA.  When employed by TIAA, she was Managing Director of Business Risk.

40.     Defendant Martin Snow is a former member of the Committee, serving on the Committee during the Class Period.  He is no longer employed by TIAA.

41.     Defendants TIAA, the Committee, Mr. Spriggs, Mr. O'Brien, Ms. Atkins, Ms. Collins, Mr. Riegel, Mr. Shamansky, Mr. Weinman, Mr. Bhansaili, Mr. Dunne, Mr. Goff, Mr. Moslander, Mr. Rollock, Ms. Gibson, Mr. Klaristenfeld, Ms. Kyle and Mr. Snow were fiduciaries to the Plans during the Class Period within the meaning of ERISA §§ 3(21)(A)(i) and

(iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii), and parties in interest to the Plans within the meaning of ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

42.     Defendant TIAA also served as an investment manager within the meaning of ERISA §§ 3(38), 29 U.S.C. § 1002(38), to one or more of the investment options offered by the Plans during the Class Period, including the TIAA Real Estate Account, and is therefore a fiduciary with respect to assets of the Plans allocated to such investment options.

## V.  FACTS

### A.     <u>The Plans and Administration of the Plans.</u>

43.     The Plans are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which are subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

44.     Each of the Plans is also an "employee pension benefit plan" or "pension plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and a "defined contribution plan" or "individual account plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

45.     The Plans cover eligible employees of TIAA and other participating employers, some or all of which are affiliates of TIAA.

46.     Participants in the Plans have the opportunity to direct the investment of all of the assets allocated to their individual accounts into the investment options offered by the Plans, and the return on those investments are credited to each participant's account.

47.     The Retirement Plan is a "money purchase" plan funded by employer contributions that are made in accordance with a formula based on an employee's age and salary. The Retirement Plan will not accept employee contributions.

48.     As of the end of the 2013 plan year, the Retirement Plan had 16,945 combined participants and deceased participants with beneficiaries entitled to benefits.

49.     The 401(k) Plan's benefits are funded by participants' voluntary tax-deferred contributions and, since January 1, 2011, by employer matching contributions on 100% of the first 3% of base salary that a participant contributes to the Plan.  The 401(k) Plan is intended to qualify as a profit-sharing plan under § 401(a) of the Internal Revenue Code, and the cash or deferred arrangement forming part of this Plan is intended to qualify under Code § 401(k).

50.     As of the end of the 2013 plan year, the 401(k) Plan had 13,628 combined participants and deceased participants with beneficiaries entitled to benefits.

51.     TIAA, as Plan Administrator, is responsible for selecting, monitoring, and removing the investment options in the Plans.  At some or all times in the Class Period, TIAA designated the Committee to carry out this duty.  The Committee's individual members are officers and/or employees of TIAA or its affiliates, and are not independent of TIAA.

52.     TIAA, as Plan Administrator, is responsible for selecting, monitoring, and removing the service-providers to the Plans, including the Recordkeeper.  At some or all times in the Class Period, TIAA designated its Executive Vice President in charge of Human Resources to carry out those of its duties as Plan Administrator that it did not designate the Committee to carry out, including this appointment/monitoring duty.  The Executive Vice Presidents in charge of Human Resources are officers and employees of TIAA.  The Executive Vice Presidents in charge of Human Resources are not independent of TIAA.

53.     TIAA is the Recordkeeper for the Plans, which provides various administrative services to the Plans.  Over the course of the Class Period TIAA has received millions of dollars, directly or indirectly, from the Plans for such services.

11

B. **Defendants' Violations of ERISA.**

54.     TIAA and the Committee caused the Plans to invest more than three billion dollars in various registered investment companies, pooled separate accounts and annuity contracts established and managed by TIAA or its affiliate CREF.[1] As a result, the Plan has paid TIAA tens of millions of dollars in investment management fees during the Class Period.

55.     Contributions under the Plans are applied in accordance with each participant's contribution allocation to the investment options offered, which consist of: (i) individual annuity contracts issued to each participant by TIAA ("TIAA Traditional Annuity Contracts" or "TIAA Traditional"), (ii) CREF accounts through unallocated variable annuity contracts issued by CREF, (iii) TIAA-CREF Institutional Mutual Funds, and (iv) the TIAA Real Estate Account through unallocated variable annuity contracts issued by TIAA.

56.     The investments in TIAA Traditional are reported as "Unallocated TIAA Traditional Annuity Contracts," the CREF variable annuity contracts and investments in the Mutual Funds are reported as "Registered Investment Companies" and the TIAA Real Estate Account is reported as "Pooled Separate Account."

57.     The governing plan documents of the Retirement Plan and the 401(k) Plan list the investment options available under the respective Plan as of January 1, 2014.  The investment menus for the Plans are identical.

---

[1] A registered investment company is a mutual fund or other investment company that is registered with the SEC.  Registered investment companies are required to report their policies and financial conditions, much like a publicly-traded company.  Most investment companies in the United States must register with the SEC; they are regulated by the Investment Company Act of 1940.  Pooled separate accounts are commingled investment funds that are not registered, not publicly traded, and generally available only to institutional investors.  An annuity is a contractual financial product sold by financial institutions that is designed to accept and grow funds from an individual and then, upon annuitization, pay out a stream of payments to the individual at a later point in time.

58.    As of January 1, 2014, the Plans offered the following investment options:

*General, Separate & CREF Accounts Available Under Annuity Contracts & Certificates*

- TIAA Traditional
- CREF Stock
- CREF Growth
- CREF Equity Index
- CREF Global Equities
- TIAA Real Estate
- CREF Bond Market
- CREF Inflation-Linked Bond
- CREF Money Market
- CREF Social Choice

*Mutual Funds*

- TIAA-CREF Growth & Income Fund – Institutional Class
- TIAA-CREF Social Choice Equity Fund – Institutional Class
- TIAA-CREF Real Estate Securities Fund – Institutional Class
- TIAA-CREF International Equity Fund – Institutional Class
- TIAA-CREF International Equity Index Fund – Institutional Class
- TIAA-CREF Mid-Cap Growth Fund – Institutional Class
- TIAA-CREF Mid-Cap Value Fund – Institutional Class
- TIAA-CREF S&P 500 Index Fund – Institutional Class
- TIAA-CREF Small-Cap Equity Fund – Institutional Class
- TIAA-CREF Large-Cap Value Fund – Institutional Class
- TIAA-CREF Large-Cap Value Index Fund – Institutional Class
- TIAA-CREF Large-Cap Growth Fund – Institutional Class
- TIAA-CREF Large-Cap Growth Index Fund – Institutional Class
- TIAA-CREF Emerging Markets Equity Fund – Institutional Class
- TIAA-CREF Small-Cap Blend Index Fund – Institutional Class
- TIAA-CREF High Yield Fund – Institutional Class
- TIAA-CREF Bond Plus Fund – Institutional Class
- TIAA-CREF Short-Term Bond Fund – Institutional Class
- TIAA-CREF Lifecycle 2010 Fund – Institutional Class
- TIAA-CREF Lifecycle 2015 Fund – Institutional Class
- TIAA-CREF Lifecycle 2020 Fund – Institutional Class
- TIAA-CREF Lifecycle 2025 Fund – Institutional Class
- TIAA-CREF Lifecycle 2030 Fund – Institutional Class
- TIAA-CREF Lifecycle 2035 Fund – Institutional Class
- TIAA-CREF Lifecycle 2040 Fund – Institutional Class
- TIAA-CREF Lifecycle 2045 Fund – Institutional Class
- TIAA-CREF Lifecycle 2050 Fund – Institutional Class

- TIAA-CREF Lifecycle 2055 Fund – Institutional Class
- TIAA-CREF Lifecycle Retirement Income Fund – Institutional Class

59.     All investments in the Plans are managed by TIAA, the Plans' sponsor and administrator, or an affiliated entity.

60.     The Plans' Forms 5500 describe as mutual funds: CREF Stock, CREF Growth, CREF Equity Index, CREF Global Equities, CREF Bond Market, CREF Inflation-Linked Bond, CREF Money Market, and CREF Social Choice.  These CREF mutual funds are distinguished by issuer from the TIAA-CREF Institutional Mutual Funds.

61.     The Plans' most recent Form 5500 filings with the U.S. Department of Labor each contain an Independent Auditor's Report, which state respectively that at the end of the 2013 plan year the Retirement Plan had $2,317,526,131 in net assets available for benefits and the 401(k) Plan had $820,055,256 in net assets available for benefits.

62.     Administering TIAA retirement plans with more than three billion dollars in assets, Defendants had considerable leverage to strike agreements with service providers that defrayed the reasonable costs of administering the Plans, as is required by ERISA § 404(a)(1)(A)(ii).

63.     Defendants did not do so, but instead favored TIAA to provide services and proprietary investment options to the Plans at higher costs.

64.     In the five-year period 2010-2014, the total plan cost of the Retirement Plan was approximately 52 basis points.

65.     In the five-year period 2010-2014, the total plan cost of the 401(k) Plan was approximately 55 basis points.

66.     A recently published report shows that in 2012 the average 401(k) defined contribution plan with more than a billion dollars in assets bore a total plan cost as a percentage

14

of assets of 33 basis points.  *See* BrightScope and Investment Company Institute, *The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans* 41 (Dec. 2014), www.ici.org/pdf/ppr_14_dcplan_profile_401k.pdf.

67.     In the five-year period 2010-2014, the Retirement Plan paid approximately $11,683,310 more at the 52 basis points fee rate than did a plan at the 33 basis points fee rate.

68.     In the five-year period 2010-2014, the 401(k) Plan paid approximately $4,822,081 more at the 55 basis points fee rate than did a plan at the 33 basis points fee rate.

69.     Administrative costs charged by TIAA in its role as recordkeeper are excessive. The general, separate and CREF accounts available under annuity contracts and certificates (including CREF mutual funds) charged 24 basis points for revenue sharing to pay for TIAA's recordkeeping and administrative services, and the TIAA-CREF Institutional Mutual Funds charged 15 basis points for the same.

70.     In the period 2010-2014, the 401(k) Plan therefore paid approximately $5.7 million through revenue sharing for services to the Recordkeeper, TIAA, and the Retirement Plan paid approximately $19.4 million.

71.     The 2013 revenue sharing amount per Retirement Plan participant (including active, retired, separated, and deceased participants whose beneficiaries are entitled to benefits) was approximately $265.

72.     The 2013 revenue sharing amount per 401(k) Plan participant (including active, retired, separated, and deceased participants whose beneficiaries are entitled to benefits) was approximately $109.

73.     In contrast, the annual Defined Contribution Plan & Fee Survey by NEPC, LLC shows in 2013 a median recordkeeping fee of $80 per year for each participant.  *See* Ross

Bremen & Dan Beaton, *Defined Contribution Plan Fees Continue to Decline: 2013 NEPC Plan & Fee Study* (NEPC, LLC, Boston, MA) Sept. 2013,

http://www.nepc.com/writable/research_articles/file/2013_09_nepc_dc_plan_fees.pdf.

74.     These facts support an inference that TIAA's recordkeeping/administrative compensation was excessive.

75.     The Plans and their participants, including Plaintiffs and members of the proposed class, paid excessive fees because Defendants favored TIAA's proprietary funds and favored TIAA as recordkeeper.

76.     These payments and arrangements between TIAA and the Plans were prohibited by ERISA and the Defendants breached their fiduciary duties under ERISA by causing the payments and arrangements.

**VI.  ERISA'S FIDUCIARY STANDARDS AND PROHIBITED TRANSACTIONS**

77.     ERISA imposes strict fiduciary duties of loyalty and prudence upon Defendants as fiduciaries of the Plan.  ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
>      (A)     for the exclusive purpose of:
>
>           (i)     providing benefits to participants and their beneficiaries; and
>
>           (ii)     defraying reasonable expenses of administering the plan;
>
>      (B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;
>
>      (C)     by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

78.     ERISA also imposes co-fiduciary duties on plan fiduciaries.  ERISA § 405, 29 U.S.C. § 1105, states in relevant part that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)     if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

79.     Under ERISA, fiduciaries who exercise discretionary authority or control over the selection of plan investments and the selection of plan service providers must act prudently and solely in the interest of participants and beneficiaries of the plan when performing such functions.  Thus, "the duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).  As the Department of Labor explains,

[T]o act prudently, a plan fiduciary must consider, among other factors, the availability, riskiness, and potential return of alternative investments for his or her plan. [Where an investment], if implemented, causes the Plan to forego other investment opportunities, such investments would not be prudent if they provided a plan with less return, in comparison to risk, than comparable investments available to the plan, or if they involved a greater risk to the security of plan assets than other investments offering a similar return.

DOL Opinion 88-16A (1988).

80.     Pursuant to these duties, fiduciaries must ensure that the services provided to the plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act prudently and solely in the interest of the Plan participants and beneficiaries … in determining which investment options to utilize or make available to Plan participants or beneficiaries. In this regard, the responsible Plan fiduciaries must assure that the compensation paid directly or indirectly by the Plan to [service providers] is reasonable . . . .

DOL Opinion 97-15A (1997); DOL Opinion 97-16A (1997).

81.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of plan participants and beneficiaries. As the Department of Labor has warned:

> [T]he Department has construed the requirements that a fiduciary act solely in the interest of, and for the exclusive purpose of providing benefits to participants and beneficiaries, as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. In other words, in deciding whether and to what extent to invest in a particular investment, or to make a particular fund available as a designated investment alternative, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. A decision to make an investment, or to designate an investment alternative, may not be influenced by non-economic factors unless the investment ultimately chosen for the plan, when judged solely on the basis of its economic value, would be equal to or superior to alternative available investments.

DOL Opinion 98-04A (1998); *see also* DOL Opinion 88-16A (1988).

82.     The Department of Labor counsels that fiduciaries are responsible for ensuring that a plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate differences in fees and services between prospective service providers:

> While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

> In comparing estimates from prospective service providers, ask which services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all

18

services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs.

Some service providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example, mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing other services. There also may be sales and other related charges for investments offered by a service provider. The information provided by service providers noted above should include a description of all compensation related to the services to be provided that the service providers expect to receive directly from the plan as well as the compensation they expect to receive from other sources.

*Meeting Your Fiduciary Responsibilities*, U.S. Dep't of Labor Employee Benefits Security Admin. (Feb. 2012), http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html.

83.    In a separate publication, the Department of Labor writes:

The Federal law governing private-sector retirement plans, the Employee Retirement Income Security Act (ERISA), requires that those responsible for managing retirement plans -- referred to as fiduciaries -- carry out their responsibilities prudently and solely in the interest of the plan's participants and beneficiaries. Among other duties, fiduciaries have a responsibility to ensure that the services provided to their plan are necessary and that the cost of those services is reasonable.

* * *

Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

* * *

By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly

19

from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses*, U.S. Dep't of Labor Employee Benefits Security Admin. (Dec. 2011), http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.

84. ERISA prohibits certain transactions with plans involving parties in interest and fiduciaries because of their significant potential for and risk of abuse. Specifically, ERISA § 406 provides in relevant part:

**(a) Transactions Between Plan and Party in Interest.**—Except as provided in section 408:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 407(a).

(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 407(a).

**(b) Transactions Between Plan and Fiduciary.**—A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are

adverse to the interests of the plan or the interests of its participants or beneficiaries, or

> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106.

85.     ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

86.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary, participant, beneficiary, or the Secretary of Labor to bring a suit for appropriate relief under ERISA § 409.

## VI. CLASS ALLEGATIONS

87.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All participants in the Teachers Insurance and Annuity Association of America Code Section 401(k) Plan and/or Teachers Insurance and Annuity Association of America Retirement Plan from October 14, 2009 to the present. Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.

88.     Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

89.     The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The Plans together had more than 20,000 participants and beneficiaries in every year of the Class Period, all of whom suffered from the

excessive and improper fees alleged herein. The number of class members is so large that joinder of all its members is impracticable.

90.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

•       Whether Defendants were fiduciaries responsible for monitoring and making decisions with respect to the investments in the Plans and services for the Plans;

•       Whether Defendants breached their fiduciary duties to the Plans by causing the Plans to invest their assets in TIAA and affiliated investment funds;

•       Whether the investment and service-provider decisions made by Defendants were solely in the interests of Plan participants and beneficiaries;

•       Whether the Plans suffered losses as a result of Defendants' fiduciary breaches;

•       Whether Defendants caused the Plans to engage in prohibited transactions;

•       Whether monies received and retained by a Defendant were plan assets;

•       Whether an affirmative defense to a prohibited transaction claim applies and can be satisfied by Defendants;

•       Whether Defendants' acts proximately caused losses to the Plans and, if so, the appropriate relief to which Plaintiffs, on behalf of the Plans and the Class, are entitled.

91.     Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

92.     Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation.  Plaintiffs have no interests antagonistic to those of other members of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

93.     Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  Class action status also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

94.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

95.     In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VI. CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### Disloyal Conduct in Connection with Investments

96.     Plaintiffs repeat and re-allege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

97.     This Count alleges fiduciary breach against Defendants TIAA, the Committee, and the members of the Committee (the "Investment Oversight Defendants").

98.     The Investment Oversight Defendants are responsible for selecting, monitoring, and removing investment options in the Plans.

99.     The Investment Oversight Defendants caused the Plans to invest billions of dollars in investment options managed by TIAA and its affiliates, favoring exclusively the proprietary investment options of the TIAA-CREF organization.

100.     TIAA and its affiliates collected excessive and unnecessary fees from these investment arrangements.

101.      By the conduct and omissions described above, the Investment Oversight Defendants failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

102.     The Investment Oversight Defendants failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the

conduct of an enterprise of like character and with like aims, in violation of ERISA

§ 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

103.    As a direct and proximate result of these breaches of fiduciary duties, the Plans

and their participants have paid TIAA, directly and indirectly, substantial excess investment

management and other fund-related fees during the Class Period, and suffered lost-opportunity

costs which continue to accrue, for which the Investment Oversight Defendants are jointly and

severally liable pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C

§ 1132(a)(2).

## SECOND CLAIM FOR RELIEF

### Prohibited Transactions Between the Plan and TIAA in Connection with Investments

104.    Plaintiffs repeat and re-allege each of the allegations set forth in the foregoing

paragraphs as if fully set forth herein.

105.    This Count alleges prohibited transactions against the Investment Oversight

Defendants.

106.    The Investment Oversight Defendants are fiduciaries and parties in interest to the

Plans.

107.    The Investment Oversight Defendants caused the Plans to engage in a prohibited

transaction under ERISA with each payment by the Plans of fees to TIAA in connection with the

Plans' investment in a TIAA-affiliated investment option.

108.    By the conduct and omissions described above, the Investment Oversight

Defendants failed to discharge their duties with respect to the Plans:

        a.    By causing the Plans to engage in transactions that they knew or should

        have known constitute direct or indirect transfers of the Plans' assets to, or use of

the Plans' assets by or for the benefit of, parties in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

b.      By causing the Plans to engage in the above conduct and omissions, in which a fiduciary to the Plans dealt with the assets of the Plans in its own interest or for its own account in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

c.      By causing the Plans to engage in the above conduct and omissions, in which a fiduciary to the Plans, in its individual or in any other capacity, acted on behalf of a party whose interests were adverse to the interests of the Plans or the interests of its participants or beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

109.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the Investment Oversight Defendants are liable to disgorge all fees received from the Plans, directly or indirectly, and profits thereon, and restore all losses suffered by the Plans caused by their breaches of duty.

## THIRD CLAIM FOR RELIEF

### Disloyal Conduct in Connection with Recordkeeping Services

110.    Plaintiffs repeat and re-allege each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

111.    This Count alleges fiduciary breach against Defendants TIAA, Mr. Spriggs, and Mr. O'Brien (the "Recordkeeper Oversight Defendants").

112.    The Recordkeeper Oversight Defendants are responsible for selecting, monitoring, and removing the Recordkeeper of the Plans.

113.    The Recordkeeper Oversight Defendants caused the Plans to select TIAA to provide recordkeeping services to the Plans.  TIAA collected compensation from the Plans, direct and indirect, in connection with the Plans' use of its recordkeeping and administrative services.

114.    By the conduct and omissions described above, the Recordkeeper Oversight Defendants failed to discharge their duties with respect to the Plans solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plans, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

115.    The Recordkeeper Oversight Defendants failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

116.    As a direct and proximate result of these breaches of fiduciary duties, the Plans and their participants have paid TIAA, directly and indirectly, substantial excess fees during the Class Period, and suffered lost-opportunity costs which continue to accrue, for which the Recordkeeper Oversight Defendants are jointly and severally liable pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C § 1132(a)(2).

## FOURTH CLAIM FOR RELIEF

**Prohibited Transactions Between the Plan and TIAA in Connection with
Recordkeeping Services**

117.     Plaintiffs repeat and re-allege each of the allegations set forth in the foregoing

paragraphs as if fully set forth herein.

118.     This Count alleges prohibited transactions against the Recordkeeper Oversight

Defendants.

119.     The Recordkeeper Oversight Defendants are fiduciaries and parties in interest to

the Plans.

120.     The Recordkeeper Oversight Defendants caused the Plans to engage in a

prohibited transaction under ERISA with each payment by the Plans of fees to TIAA in

connection with its recordkeeping and administrative services.

121.     By the conduct and omissions described above, the Recordkeeper Oversight

Defendants failed to discharge their duties with respect to the Plans:

> a.      By causing the Plans to engage in transactions that they knew or should
>
> have known constitute direct or indirect transfers of the Plans' assets to, or use of
>
> the Plans' assets by or for the benefit of, parties in interest, in violation of ERISA
>
> § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and
>
> b.      By causing the Plans to engage in the above conduct and omissions, in
>
> which a fiduciary to the Plans dealt with the assets of the Plans in its own interest
>
> or for its own account in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1);
>
> and
>
> c.      By causing the Plans to engage in the above conduct and omissions, in
>
> which a fiduciary to the Plans, in its individual or in any other capacity, acted on

28

behalf of a party whose interests were adverse to the interests of the Plans or the interests of its participants or beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

122.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the Recordkeeper Oversight Defendants are liable to disgorge all fees received from the Plans, directly or indirectly, and profits thereon, and restore all losses suffered by the Plans caused by their breaches of duty.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.      A declaration that the Defendants breached their fiduciary duties under ERISA § 404 and violated ERISA § 406 by causing the Plans to engage in prohibited transactions;

B.      An order compelling the disgorgement of all fees paid and incurred, directly or indirectly, to TIAA and its affiliates by the Plans, including disgorgement of profits thereon;

C.      An order compelling the Defendants to restore all losses to the Plans arising from Defendants' violations of ERISA, including lost-opportunity costs;

D.      An order granting equitable restitution and other appropriate equitable monetary relief against Defendants;

E.      Such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the Plans, the appointment of independent fiduciaries to administer the Plans, and rescission of the Plans' investments in TIAA and affiliated entities' funds;

F.   An order certifying this action as a class action, designating the Class to receive the amounts restored or disgorged to the Plans, and imposing a constructive trust for distribution of those amounts to the extent required by law;

G.   An order enjoining Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

H.   An order awarding Plaintiffs and the Class their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or the Common Fund doctrine, and post-judgment interest; and

I.   An order awarding such other and further relief as the Court deems equitable and just.

Dated: April 6, 2016               Respectfully submitted,

s/ Gregory Y. Porter
Gregory Y. Porter, *pro hac vice*
Ryan T. Jenny, *pro hac vice*
Bailey & Glasser LLP
1054 31st Street, NW
Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny @baileyglasser.com

Kevin Barrett
Bailey & Glasser LLP
137 Betsy Brown Road
Port Chester, NY 10573
Telephone: (646) 776-8580
kbarrett@baileyglasser.com

Major Khan
Major Khan LLC
1120 Avenue of the Americas
Suite 4100
New York, NY 10036
Telephone: (646) 546-5664

Facsimile: (646) 546-5755
mk@mk-llc.com

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of April 2016, a true and correct copy of the foregoing was served upon all counsel of record by operation of this Court's CM/ECF system.

<u>/s/ Gregory Y. Porter</u>
Gregory Y. Porter
