**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CYNTHIA RICHARDS-DONALD and MICHELLE DEPRIMA, individually and on behalf of a class of all other persons similarly situated, and on behalf of the Teachers Insurance and Annuity Association of America Code Section 401(k) Plan and the Teachers Insurance and Annuity Association of America Retirement Plan,<br><br>     Plaintiffs,<br><br>  v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA and TIAA PLAN INVESTMENT REVIEW COMMITTEE,<br><br>     Defendants. | Civ. A. No. 15-cv-08040-PKC |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

## I. INTRODUCTION

This Settlement is the culmination of nearly two years of litigation, resulting in a $5 million Settlement Fund and significant changes to two retirement plans offered to employees of TIAA-CREF. For the first time, TIAA will open its plans to independent investment managers, and in the process offer the opportunity for Plan assets to be moved from TIAA mutual funds into non-TIAA managed products. The result should directly save the Plans and the Class over $2 million per year in fee savings. Because of the records available, the class members will automatically receive their monetary distribution without the need to complete or submit a claim form or prove

eligibility.[1]

This litigation, which was commenced on October 13, 2005, alleges, among other things, that the fiduciaries responsible for overseeing the Plans breached their duties under the Employee Retirement Income Security Act of 1974 (ERISA) by allowing the Plans to pay excessive fees to TIAA and by including only TIAA-managed investments in the Plans. Defendants have denied and continue to deny any breaches or ERISA violations.

This monetary payment and non-monetary terms will provide meaningful relief to class members. Under the Plan of Allocation, the Class will share the Settlement based on a formula that considers the alleged injury to each class member. The actual recovery per class member will depend on the number of class members who are eligible for an award and the class member's average account balances during the Class Period.

The Settlement was the product of extensive arms-length negotiation with the assistance of Judge Daniel Weinstein (Ret.) of JAMS. During the Parties' June 22, 2016 all-day mediation, no resolution was reached. However, continuing conversations and the development of therapeutic remedies, including negotiated changes to the Plans' investment menus, led the parties to agree to this settlement on May 8, 2017. In light of the litigation risks further prosecution of this action would inevitably entail, it is proper for the Court to: (1) preliminarily approve the proposed Settlement; (2) approve the proposed form and method of notice to the Class; and (3) schedule a hearing at which the Court will consider final approval of the Settlement.

### II. THE CLAIMS IN THE CASE

Plaintiffs allege that Defendants were fiduciaries of the Plans and that Defendants engaged

---

[1] The fully executed settlement agreement, dated May 8, 2017, ("Settlement") is attached hereto as Exhibit A and the Declaration of Class Counsel, Gregory Porter ("Porter Decl."), is attached hereto as Exhibit B.

in breaches of fiduciary duty under 29 U.S.C. § 1104(a). In particular, Plaintiffs allege Defendants breached their fiduciary duty to ensure that the fees and expenses paid out of the assets in the Plans were reasonable and that the Plans' fiduciaries failed to make decisions concerning the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that prudent fiduciaries acting in a like capacity and familiar with such matters would have used. These claims include allegations of excessive administrative and investment management fees, as well as assertions that the Fiduciaries imprudently and disloyally filled the Plans entirely with options managed by, and paying fees to, TIAA.

TIAA denies the claims and all liability. The Defendants argue, among other things, that (a) the investment options selected for the Plans were reasonable in that they included a variety of fixed and variable annuities that offer participants lifetime income opportunities; (b) the Plans offered an appropriate investment mix for participants, across different asset classes, risk profiles, fee structures, and outcome opportunities; (c) the fees charged by the investment options in the Plans, including the fixed and variable annuities, were reasonable and often lower than the fees charged by TIAA's competitors for similar products; (d) the investment options in the Plans provided participants with strong performance; (e) the recordkeeping fees charged to Plan participants were reasonable based on the nature and quality of the services provided by TIAA; and (f) TIAA met the Prohibited Transaction Exemption requirements to offer its own products as investment options for the Plans.

**The Action**

This litigation began on October 13, 2015, with the filing of Plaintiffs' Complaint. Doc. 1. Defendants answered on January 29, 2016, denying all claims. Plaintiffs filed an Amended Complaint, the operative complaint, on April 6, 2016 (doc. 29), which Defendants answered on

May 2, 2016, again denying all claims. The parties then engaged in a long series of discovery and settlement communications. After obtaining and reviewing over 20,000 pages of material produced by Defendants, the Parties agreed to mediation at the recommendation of this Court. In June 2016, the Parties engaged in an all-day, in-person mediation supervised by the Honorable Daniel Weinstein (Ret.), followed by multiple telephonic conferences with the mediator and parties leading to the signing of the Memorandum of Understanding detailing key elements of any settlement. See Doc. 34. Under the Memorandum of Understanding, Defendants would engage in a process to select non-proprietary options for inclusion of the Plan, providing the opportunity for lower fees for class members. Since executing the Memorandum of Understanding, Defendants, with the help of an independent consultant and feedback from Plaintiffs, have identified the specific plan changes designed to provide lower-cost and non-proprietary options for the Plans and their participants.

### III.     THE TERMS OF THE PROPOSED SETTLEMENT

In exchange for the dismissal of the Action and for entry of the Judgment as provided for in the Settlement Agreement, Defendants will make available to Settlement Class Members the benefits described below (the "Settlement Benefits").

Defendants will deposit $5,000,000 (the "Gross Settlement Amount") in an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will be used to pay the participants' recoveries as well Class Counsel's Attorneys' Fees and Costs, Administrative Expenses of the settlement, and Class Representatives' Compensation as described in the Settlement Agreement.

Additionally, Defendants have agreed to a set of non-monetary therapeutic measures relating to the Plans. While the Plans did not previously include any non-proprietary funds, Defendants

4

have agreed as part of the settlement to: (1) add ten non-proprietary investment options, including five options with investment management fees below 15 basis points, to the Plans; (2) rebate any revenue sharing from these non-proprietary funds to the participants in the Plans; (3) add a "brokerage window" from which Plan participants can access thousands of additional non-proprietary funds; and (4) on a one-time basis, provide Plaintiffs with the proposed changes to the Plan menus including, in the absence of a participant decision to transfer to a different fund, the mapping of replaced fund assets to agreed-upon non-proprietary index products and, where appropriate, the TIAA Lifecycle Funds. These agreed-upon plan changes will result in significant fee savings compared to the fees paid during the Class Period. Overall, the Plans and their participants should save over $2 million per year in fees. In some instances, the investment management fees paid by Plan participants may decline by as much at 90% (if, for example, participant investments will be mapped from the current small cap equity fund to a small cap index fund). *See* Exh. F to the Settlement Agreement (detailing proposed changes to the plan menus).

TIAA also has agreed to (1) retain an independent consultant to advise the Committee on the performance of investment options in the Plans and their investment costs relative to the appropriate peer group; (2) retain an independent consultant on a one-time basis to review the Plans' recordkeeping fees for potential cost efficiencies in light of the types and quality of services that TIAA provides; and (3) review and enhance its investor education program for Plan participants with respect to Plan investment options and the fees associates with those options. These benefits represent a significant value to the Plans far above the monetary settlement.

### A. Notice and Class Representatives' Compensation

The notice costs and all costs of administration of the Settlement will come out of the Gross

Settlement Amount. Incentive payments to the Named Plaintiffs in an amount to be approved by the Court will also be paid out of the Gross Settlement Fund. Plaintiffs will seek $5,000 for each of the two Named Plaintiffs. This amount is well in line with precedent recognizing the value of individuals stepping forward to represent class — particularly in a case, like the present, where the potential benefit to any individual does not outweigh the cost of prosecuting the claim and there are significant risks, including the risk of no recovery, the risk of alienation from their employers and peers, and the risk of uncompensated time and energy devoted to a lawsuit with uncertain prospects for success. *Beesley v. Int'l Paper Co.*, 2014 U.S.Dist. LEXIS 12037, *13–14 (S.D.Ill. Jan. 31, 2014)(J. Herndon)(Approving Named Plaintiff Compensation of $25,000 each to six surviving named plaintiffs in 401(k) fee settlement and noting that "ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers."). Further, the total award requested for the Named Plaintiffs represents less than one-quarter of one percent of the Settlement Fund.

### B. Attorneys' Fees and Costs

Class Counsel will request attorneys' fees to be paid out of the Gross Settlement Fund in an amount not more than one-third of the Gross Settlement Amount, as agreed with the Named Plaintiffs, or $1,666,667, as well as reimbursement of costs incurred. "A one-third fee is consistent with the market rate in settlements concerning this particularly complex area of law." *Spano v. The Boeing Co.*, 2016 WL 3791123, *2 (March 31, 2016) (quoting cases).

Further, as detailed above, the settlement has a value to the Class far greater than the monetary amount, in the form of certain therapeutic measures. These substantial benefits to the Class should be considered in assessing attorneys' fees. See, e.g, *Fleisher v. Phoenix Life Ins. Co.*, No. 11-8405, 2015 WL 10847814, *4 (S.D.N.Y. Sept. 9, 2015) (J. McMahon). The benefits

are more than speculative as Defendants have agreed to map substantial plan assets from their proprietary funds to less expensive non-proprietary and target-date options in the absence of a participant decision to transfer to a different fund. The fee differences are known, as is the potential volume of assets being mapped. These changes alone will have a direct and calculable benefit to the Class, totaling over $2 million per year in fee savings, subject to participant investment elections. Savings may also increase over time if participants choose to move assets into lower-cost non-proprietary options. Further, Class Counsel will not seek fees on the interest earned on the Gross Settlement Amount. Class Counsel will also seek no further fees or costs for review of compliance, document review, or for communications with Class members or Defendants. Further, Class Counsel bears the risk of half of the costs of pursuing the settlement if the settlement is not approved or otherwise terminated. A formal application for attorneys' fees and costs and for named plaintiff awards will be made by a date established by the Court prior to the deadline for class members to file objections to the Settlement, and it will be posted on the Settlement website.

## IV. ARGUMENT

### a. General Governing Principles

There is a strong judicial policy that favors the negotiated resolution of litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005); *TBK Partners, Ltd. V. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982). This is especially true with respect to class actions. *Wal-Mart Stores, Inc.*, 396 F.3d at 117. For these reasons, "the compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.*; see also *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129–30 (2d Cir. 2001).

The approval of a proposed class action settlement occurs in a two-step process. The first

step requires the Court, in the exercise of its discretion, to preliminarily determine whether the proposed Settlement falls within the range of possible approval. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).

The Court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing. Manual for Complex Litigation, Fourth, §13.14, at 172–73 (Fed. Jud. Ctr. 2004) ("Manual Fourth"). The Court is not required at this point to make a final determination:

> The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* § 21.632, at 321. This initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. *Id.* If the Court finds the proposed Settlement (i) to be the product of serious, informed, and non-collusive negotiations; (ii) within the range of possible approval; and (iii) to have no obvious deficiencies, it then proceeds to the second step in the review process, the final fairness hearing. *In re NASDAQ Mkt-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The proposed agreement is viewed "in a light most favorable to settlement." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996).

### a. The Settlement is the Product of Serious, Informed, and non-collusive negotiations.

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arms-length negotiations. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992). When the requirement of arm's-length negotiations is satisfied, counsel's endorsement of a proposed settlement is entitled to significant weight. *In re Veeco*

8

*Instruments Inc. Sec. Litig.*, No. 05-MDL-1695; 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007)("courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); see also, *In re PaineWebber Ltd. P'shps Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997).

The proposed Settlement here is the result of lengthy, contentious and complex arms-length negotiations between the parties. Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. Class Counsel is very experienced in class action litigation generally and, in particular, class litigation arising from breaches of fiduciary duties to retirement plans under ERISA. In settlement discussions, the Class was represented by multiple attorneys, each with a decade of experience bringing, settling, and trying cases on behalf of retirement plan participants alleging imprudence, disloyalty, and prohibited transactions under ERISA. Class Counsel is intimately familiar with this unique and complex area of law. Exh. B, ¶¶ 4–6. It is Class Counsel's opinion that the proposed Settlement is fair and reasonable. *Id*. at ¶ 7.

In addition, the negotiations were conducted with the assistance of an independent mediator during a full-day mediation, in addition to multiple discussions that were held prior to and after the mediation. The use of a mediator in settlement negotiations further supports the presumption of fairness and the conclusion that the Settlement achieved was free from collusion. *In re Giant Interactive Group, Inc. Sec. Litig.*, No. 07-10588, 2011 WL 5244707, at *4 (S.D.N.Y. Nov. 2, 2011); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No 02-5575, 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in settlement negotiations help "ensure that the proceedings were free of collusion and undue pressure").

Moreover, in connection with their settlement discussions, the Parties exhaustively

discussed the merits, strengths, and weaknesses of the Action, risks of litigation, available insurance, financial condition of TIAA, and the financial impact to Defendants, the Class, and the Plans, with respect to any judgment or settlement. Based on these discussions, the Parties were able to negotiate a fair settlement that they believe to be in their respective best interests. Because the Settlement is the product of serious, informed, non-collusive negotiations, preliminary approval should be granted.

"Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." Manual (Fourth) § 21.633, at 321. Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval. *Id*. at 322. As explained below, the proposed Settlement now before this Court and on file herein falls squarely within the range of reasonableness warranting preliminary approval of the Class Notice apprising class members of the Settlement and setting a hearing on final approval.

### b. The Settlement is within the range of possible approval and has no obvious deficiencies.

As discussed above, the Settlement includes a $5 million settlement fund, fee savings moving forward that may exceed $2 million per year, and significant other changes to the Plans, including the introduction of non-proprietary investments as both core investment options for the Plans and through a brokerage window offering thousands of non-proprietary investment alternatives to Class Members. As a result of the settlement, the Class will benefit now from the Settlement Fund and plan reforms, instead of years from now if the case were ultimately successful at trial. The distinction is meaningful. Cases of this nature tend to have significant

life-cycles. In one such case, *Tussey v. ABB, Inc.*, participants filed their action in 2006, received a trial verdict in 2012, saw that verdict reduced by the court of appeals in 2014 and still have not received any compensation, as their case is currently on remand for a second time on the question of how to calculate damages. *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (remanding on damages). If this case continues, it too could take a decade or more for the Class to receive any benefit, even if Plaintiffs prevail at trial.

Class Counsel continue to believe in the merits of these claims. ERISA Section 404(a)(1)(A) provides that "a fiduciary shall discharge his duties with respect to a plan . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." Plaintiffs believe the decision to offer exclusively TIAA-managed products and utilize TIAA as a plan recordkeeper did not meet that standard.

However, there are significant legal obstacles and defenses which render recovery in this case uncertain, and, if there is a recovery, affect the amount. Defendants deny all of Plaintiffs' allegations, deny that they committed or participated in any fiduciary breaches or other wrongdoing, have vigorously contested Plaintiffs' allegations, and would continue to do so.

If the Action were to proceed through motions and trial, Plaintiffs would have to overcome numerous defenses asserted by the Defendants. The list of questions Plaintiffs would have to overcome include:

(i) Because participants knew they were investing in TIAA-managed funds, were their claims barred under ERISA's three-year "actual knowledge" statute of limitations? *Sulyma v. Intel Corp. Investment Policy Committee*, No. 15-4977, 2017 WL 1217185, *6–7 (N.D. Cal. March 31, 2017) (finding actual knowledge where 401(k)

11

plan participants received disclosures of fund holdings).

(ii) Because the Plans included TIAA-managed index products in addition to actively managed funds, were Plaintiffs' claims subject to a defense that the Plans offered a prudent range of options? *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (affirming dismissal where 401(k) plan participants were offered funds with "a wide range of expense ratios" that were "also offered to investors in the general public")

(iii) Because certain TIAA-managed products outperformed their respective benchmarks, could Plaintiffs prove the decision to include only TIAA-managed products was imprudent?

(iv) Does Prohibited Transaction Class Exemption 77-4 offer protection from liability for including proprietary funds in a retirement plan?

(v) Is total plan cost an appropriate measurement of the reasonableness of plan fees?

(vi) Because the TIAA Plans, unlike most retirement plans, contained annuity products, can their administrative fees be properly benchmarked against plans which do not contain such products?

(vii) What is the appropriate measure of damages? *Tussey*, 850 F.3d at 960 (remanding for determination of method of calculating damages where mutual fund was imprudently added to 401(k) plan.)

Instead of a drawn-out decade of litigation in which the Plans continue to offer only proprietary funds, the Class will, through settlement, receive millions of dollars in fee savings in addition to the $5 million settlement fund and access to non-proprietary options both as core funds in the Plans and through the brokerage window. In this way, class members benefit now whether they are current participants in the Plans or former participants. Those participants owed

a recovery will be automatically mailed a check, requiring no effort of their own. The Settlement provides for these payments to be calculated based on the asset balances of the participants, a proxy for the fees each paid to TIAA as reflected in the total plan cost alleged to be excessive.

The proposed Settlement provides for distributions to Class Members from the Net Settlement Fund. The allocation is based on Plaintiffs' theory of the case and reflects Plaintiffs' contention that the total plan cost was excessive and that the decision to only include TIAA-managed funds was imprudent. There is no reason to doubt the fairness of the proposed allocation for purposes of preliminary approval. Even at the final-approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel." *In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 429–30 (S.D.N.Y. 2001). The proposed method of allocation is "rationally based on legitimate considerations". *PaineWebber*, 171 F.R.D. at 131, and treats Settlement Class members (including Plaintiffs) fairly. Accordingly, the Court should preliminarily approve the settlement and allocation.

### V. THE PROPOSED NOTICE PLAN IS ADEQUATE

Due process and Rule 23(e) do not require that each Class Members receives notice, but do require that class notice be achieved "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores Inc. v. Visa Usa Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)(internal quotations and citations omitted).

"Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 172 (1974). "Individual notice must be provided

to those class members who are identifiable through reasonable effort." *Id*. at 175.

Here, the proposed form and method of notice of proposed settlement agreed to by the parties satisfy all due process considerations and meet the requirements of Fed. R. Civ. P. 23(e)(1). Plaintiffs' proposed form of Notice is attached to the Class Action Settlement Agreement. The proposed Notice will fully apprise Settlement Class members of the existence of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights, including (i) the terms and operation of the Settlement; (ii) the nature and extent of the release and covenant not to sue, (iii) the maximum counsel fees that will be sought; (iv) the procedure and timing for objecting to the Settlement; (v) the date and place of the fairness hearing; and (vi) the website on which the full settlement documents, and any modifications to those documents, will be posted.

The Notice Plan consists of multiple components designed to reach class members. First, the Individual Notice will be sent by first-class mail to the address of current Plan Participants and the last known address of former Plan Participants shortly after entry of the Preliminary Approval Order. Addresses of class members are maintained by TIAA, who use this information for, *inter alia*, mailing Plan notices, participant communications, and other Plan-related information. Participants include both current and former employees of TIAA. In addition to the Individual Notice, Class Counsel and the Settlement Administrator will develop a dedicated website solely for the settlement. The Notice Plan also includes a requirement for follow-up by the Claims Administrator for those class members whose notice letters are returned because they no longer reside at such address. Class members may also receive notice of the settlement by reading published articles likely to mention the settlement.

Thus, the form of notice and proposed procedures for notice satisfy the requirements of due

process and the Court should approve the Notice Plan as adequate. *See* Newberg on Class Actions, § 8.34.

## VI. CONCLUSION

For these reasons, the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement should be granted.

Dated: May 10, 2017    Respectfully submitted,

         s/ Gregory Y. Porter
Gregory Y. Porter, *pro hac vice*
Ryan T. Jenny, *pro hac vice*
Mark G. Boyko, *pro hac vice to be filed*
Bailey & Glasser LLP
1054 31st Street, NW
Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny @baileyglasser.com

Kevin Barrett
Bailey & Glasser LLP
137 Betsy Brown Road
Port Chester, NY 10573
Telephone: (646) 776-8580
kbarrett@baileyglasser.com

Major Khan
Major Khan LLC
1120 Avenue of the Americas
Suite 4100
New York, NY 10036
Telephone: (646) 546-5664
Facsimile: (646) 546-5755
mk@mk-llc.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May 2017, a true and correct copy of the foregoing was served upon all counsel of record by operation of this Court's CM/ECF system.

/s/ Gregory Y. Porter  
Gregory Y. Porter