**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CYNTHIA RICHARDS-DONALD and MICHELLE DEPRIMA, individually and on behalf of a class of all other persons similarly situated, and on behalf of the Teachers Insurance and Annuity Association of America Code Section 401(k) Plan and the Teachers Insurance and Annuity Association of America Retirement Plan, <br><br>           Plaintiffs, <br><br>   v. <br><br> TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA and TIAA PLAN INVESTMENT REVIEW COMMITTEE, <br><br>           Defendants. | **Civ. A. No. 15-cv-08040 (PKC)** |

**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES AND NAMED
PLAINTIFF INCENTIVE AWARDS**

## **TABLE OF CONTENTS**

**Page(s)**

I.     Introduction ..................................................................................................... 2

II.    Argument .......................................................................................................... 3

       A.     The Requested Fee is Reasonable Under the Circumstances. .............. 3

              1.     Time and Labor Expended by Counsel. ...................................... 5

              2.     Magnitude and Complexities of the Litigation. ......................... 6

              3.     Risk of the Litigation. ................................................................. 7

              4.     Quality of Representation. .......................................................... 9

              5.     Requested Fee in Relation to the Settlement. ........................... 10

              6.     Public Policy Considerations. ................................................... 12

       B.     A lodestar crosscheck confirms the reasonableness of the fee
              request. ............................................................................................... 12

       C.     Plaintiffs' efforts on behalf of the Class merit the requested
              service awards. ................................................................................... 14

       D.     The Court should also award reimbursement of Class Counsel's
              costs. .................................................................................................. 16

III.   Conclusion ...................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................................ 10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ...................................... 15

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09-118, WL 1981505 (S.D.N.Y. June 1, 2012) ................................................ 17

*Beesley v. Int'l Paper Co.*,
No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................ 10, 11, 12, 15

*Bilewicz v. FMR Co.*,
No. 13-10636, 2014 WL 8332137 (D. Mass. Oct. 16, 2014) ................................... 10

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) .................................................................................................. 11

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................................... 3

*Brotherston v. Putnam Investments, LLC*,
No. 15-13825 (D. Mass. June 19, 2017) .................................................................... 7

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ........................................................................... 4, 16

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ................................................................................. 15

*Cryer v. Franklin Resources, Inc.*,
No. 16- 4265 (N.D. Cal.) ........................................................................................... 6

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ............................................................................. 14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................................................................ 3

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................ 17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ..........................................................*passim*

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .................................................................. 16

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ................................................................ 8

*Kanawi v. Bechtel Corp.*,
   590 F. Supp. 2d 1213 (N.D. Cal. Nov. 3, 2008) ........................................ 8

*Krueger v. Ameriprise Fin.*,
   No. 11-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ..................... 10

*Kruger v. Novant Health, Inc.*,
   No. 14-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .................... 10

*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011) ................................................................ 8

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................... 17

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ........................................................ 4, 7, 10

*Meiners v. Wells Fargo & Co.*,
   No. 16-3981, 2017 WL 2303968 (D. Minn. May 25, 2017) .................. 6, 7

*Nachman Corp. v. Pension Ben. Guaranty Corp.*,
   446 U.S. 359 (1980) ........................................................................... 7

*New Eng. Carpenters Health Benefits Fund v. First Databank*,
   No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ................... 13

*Nolte v. Cigna Corp.*,
   Case No. 07-2046 (C.D. Ill. Oct. 15, 2013) ......................................... 15

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ................................................................ 8

*Spano v. The Boeing Co.*,
   No. 06-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ....................... 10

*Sprague v. Ticonic,*
    307 U.S. 161 (1939) ............................................................................................ 16

*Swedish Hosp. Corp. v. Shalala,*
    1 F.3d 1261 (D.C. Cir. 1993) ............................................................................ 4

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ............................................................................ 17

*In re Synthroid Mktg. Litig.,*
    325 F.3d 974 (7th Cir. 2001) ............................................................................ 4

*Tussey v. ABB, Inc.,*
    850 F.3d 951 (8th Cir. 2017) ............................................................................ 6

*Tussey v. ABB, Inc.,*
    No. 06-4305, 2012 WL 1113291 (W.D. Mo. Nov. 2, 2012) ..................................... 15

*In re Veeco Instruments Inc. Sec. Litig.,*
    05 MDL 01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ............................................................................ 4, 13

*White v. Chevron Corp.,*
    No. 16-793, 2017 WL 2352137 (N.D. Cal. May 31, 2017) ................................. 8

*Will v. Gen. Dynamics Corp.,*
    No. 06-698 (S.D. Ill, Nov. 4, 2010) ................................................................. 15

*Willix v. Healthfirst, Inc.,*
    No. 07-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ..................................... 10

**Statutes**

29 U.S.C. § 1001, *et seq.*..................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23(h) ............................................................................................ 16

Fed. R. Civ. P. 23(h)(1) ...................................................................................... 1

Fed. R Civ. P. 54 (d) ........................................................................................ 17

**Other Authorities**

Alba Conte, 1 Attorney Fee Awards (3d ed.) .............................................. 16

*Principles of the Law of Aggregate Litigation*, A.L.I. (May 20, 2009).................... 4, 11

Theodore Eisenberg and Geoffery P. Miller, *Attorney Fees in Class
      Action Settlements: an Empirical Study*, 1 J. of Empirical Legal
      Studies 27 (2004) ...................................................................... 18

At considerable peril of failure, and through the perseverance of Class Counsel, a common fund of $5 million has been established for the benefit of the Class. Moreover, the Plans have been dramatically improved. For the first time, TIAA will open its 401(k) plans to unaffiliated investment managers, and, in the process, offer the opportunity for Plan assets to be moved from TIAA mutual funds into non-TIAA managed products.

Before even considering the value of the future fee savings, an award of one-third of the cash recovery is reasonable. But the future fee savings has real and substantial economic value to class members. The result should directly save the Plans and the Class over $3 million per year in future fees. These savings total approximately $18 million during the six-year period the covenants remain in effect. Thus, the total monetary value of the Settlement to the Plan and the Class is approximately $23 million. Class Counsel request only one-third of the common fund, or $1,666,666. This represents less than 8% of the monetary value of the Settlement. Thus, the requested fee is far lower than one-third of the total value of the settlement.

Moreover, while the Court is not required to evaluate the requested fee under the "lodestar" method, the requested fee is reasonable on that basis as well. Accordingly, the Court should, pursuant to Federal Rule of Civil Procedure 23(h)(1), award Class Counsel a fee of $1,666,666 (one-third of the monetary common fund), reimburse Class Counsel's actual costs and expenses, and award each of the named plaintiffs an incentive award of $5,000 for their service in this case.

## I.     Introduction

This lawsuit, filed on October 13, 2015, alleges, among other things, that the fiduciaries responsible for overseeing the Plans breached their duties under the Employee Retirement Income Security Act of 1974 (ERISA) by allowing the Plans to pay excessive fees to TIAA and by including only TIAA-managed investments in the Plans. Defendants have denied and continue to deny any breaches of duty or ERISA violations.

Plaintiffs filed an Amended Complaint, the operative complaint, on April 6, 2016 (Doc. 29), which Defendants answered on May 2, 2016, again denying all claims. The parties then engaged in a series of discovery and settlement communications. After obtaining and reviewing over 20,000 pages of material produced by Defendants—detailing, among other things, the fiduciary decision-making process with respect to the Plans—the Parties agreed to mediation. In June 2016, the Parties engaged in an all-day, in-person mediation supervised by the Honorable Daniel Weinstein (Ret.), followed by multiple telephonic conferences with the mediator and parties, leading to the signing of the Memorandum of Understanding detailing key elements of any settlement. *See* Doc. 34. Under the Memorandum of Understanding, Defendants would engage in a process to select non-proprietary options for inclusion in the Plan, providing the opportunity for lower fees for class members. Since executing the Memorandum of Understanding, Defendants, with the help of an independent consultant and feedback from Plaintiffs, have identified specific plan changes providing lower-cost and non-

proprietary options for the Plans and their participants. With Plaintiffs' consent, these changes were memorialized in the Settlement filed on May 10, 2017.

The $5 million cash payment, changes to the investment offerings, and additional non-monetary terms will provide meaningful relief to class members. Under the Plan of Allocation, the Class will share the Settlement based on a formula that considers the alleged injury to each class member. The actual recovery per class member will depend on the number of class members who are eligible for an award and the class member's average account balances during the Class Period. The plan changes will reduce the fees paid by the Plans and their participants, as well as open up new, non-proprietary investment options to TIAA employees saving for their retirement.

## II.   Argument

### A.   The Requested Fee is Reasonable Under the Circumstances.

Awards in class actions are most often made in reference to the common fund doctrine, pursuant to which the Supreme Court has observed that "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000). The percentage method is the exclusive or predominant means of calculating common-fund attorney fees. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (permitting alternative lodestar methodology in statutory fee litigation and in limited other circumstances, though warning that "the court must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's

3

interests"); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979–80 (7th Cir. 2001). In such cases, the benefit should be "based on both the monetary and the non-monetary value of the settlement." *Principles of the Law of Aggregate Litigation*, A.L.I., at §3.13(b) (May 20, 2009).

"[T]he trend in this Circuit," as is the case in nearly all federal courts of appeals, is also "toward the percentage method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 422 (2d Cir. 2010). Courts prefer the percentage method because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citation and internal quotation marks omitted).

"[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In *Goldberger*, the Second Circuit collected the "traditional criteria [used] in determining a reasonable common fund fee." *Id.* at 50. Those factors include "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citation, internal quotation marks and alteration omitted).

4

Here, the *Goldberger* factors support Plaintiffs' requested attorney fee award of one-third the common fund.

### 1.  Time and Labor Expended by Counsel.

Plaintiffs are represented by national counsel Gregory Porter, Ryan Jenny and Mark Boyko of Bailey & Glasser, LLP. Together, counsel has expended nearly 600 hours to date to advance Plaintiffs' cause, and incurred $58,883.39 in expenses. Declaration of Gregory Y. Porter, ("Porter Decl.") at ¶¶ 7, 11.

Based on Class Counsel's experience with similar cases, at least 30 additional hours are expected for future for interviews with the Independent Fiduciary, communications with class members, attendance at the Final Approval Hearing, and monitoring of Defendants' compliance with the Settlement. Porter Decl. at ¶ 13.

Class Counsel has pursued this matter since April, 2015—over two years of diligent research, investigation, briefing, and settlement efforts. Counsel researched the litigation pre-filing, worked with Plaintiffs on the Complaint and Amended Complaint, as well as factual case development. Counsel reviewed discovery produced by Defendants and discussed such facts with experts, mediated with a third-party, and negotiated for significant monetary and non-monetary improvements to the Plans, for which they seek only one-third of the monetary common fund. Class Counsel anticipate spending additional time responding to class member questions, preparing for the Independent Fiduciary's settlement review, attending the Final Approval Hearing, and monitoring Defendants' compliance with the settlement. The comparative low-number of hours to date

evidences the efficiency of counsel, each with a decade or more of ERISA class action experience.

### 2.   Magnitude and Complexities of the Litigation.

ERISA 401(k) fiduciary breach class actions fall within an extremely complex area of the law, which requires a willingness to risk significant resources in time and money, given the uncertainty of recovery and the protracted and sharply-contested nature of ERISA litigation.

This litigation concerned Defendants' decision to place solely TIAA-managed investment products in the retirement plans available to TIAA employees. Similar cases have been brought against other large investment advisory companies, such as Franklin-Templeton. In the case of Franklin-Templeton, in which Counsel in this matter also represent the plaintiff, the litigation has been going on for nearly a year and discovery is only now beginning. *Cryer v. Franklin Resources, Inc.*, No. 16- 4265 (N.D. Cal.). There is no telling when the plaintiff and class in that case will see compensation or plan improvements, if ever.

While some ERISA fiduciary breach cases concerning the selection of plan investment options have settled, others have been dismissed entirely or have resulted in protracted legal battles even after findings of liability. In *Tussey v. ABB, Inc.*, an ERISA fiduciary breach case concerning the inclusion of allegedly imprudent investment options, a decade of litigation, four weeks of trial and a 2012 verdict for the plaintiffs has, thus far, resulted only in two appeals and continued litigation, with no payments to the class. *See Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017). Another case, *Meiners v. Wells Fargo & Co.*, contained similar

allegations brought on behalf of employees of Wells Fargo & Co., and was recently dismissed. *See Meiners v. Wells Fargo & Co.*, No. 16-3981, 2017 WL 2303968 (D. Minn. May 25, 2017). Likewise, one week ago, trial on the merits in another similar case, this one against Putnam Investments, resulted in a judgment for Defendants on all counts. *Brotherston v. Putnam Investments, LLC*, No. 15-13825, Doc. 202 (D. Mass. June 19, 2017).

Class Counsel thus must be knowledgeable about this complex and developing area of law, aware of numerous merits and procedural pitfalls, willing to risk dismissal at any stage, and prepared to pursue many years of litigation. ERISA has been described as a "comprehensive and reticulated statute." *Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359, 361 (1980). Class Counsel are experts in this quick-developing area of law. The complexity of such litigation is enormous and supports Plaintiffs' fee request.

### 3.   Risk of the Litigation.

The Second Circuit has repeatedly recognized that "[t]he level of risk associated with litigation … is 'perhaps the foremost factor' to be considered" in ascertaining a reasonable fee in a common-fund action. *McDaniel*, 595 F.3d at 424 (quoting *Goldberger*, 209 F.3d at 54 (internal citations omitted)). As *Meiner* and *Brotherston* illustrate, the risk of zero recovery here was present from the moment Class Counsel decided to investigate this case. *Meiners*, 2017 WL 2303968 (dismissing proprietary funds 401k case); *Brotherston,* Doc. 202 (D. Mass. June 19, 2017) (entering judgment for Defendant in case concerning use of proprietary funds in employee 401(k) plan). *Meiners* and *Brotherston* are not alone. Dismissals have also

been obtained in cases alleging imprudent investment selection in 401(k) plans operated by John Deere, Chevron, and others. *See Hecker v. Deere & Co.*, 556 F.3d 575, 585–86 (7th Cir. 2009); *White v. Chevron Corp.*, No. 16-793, 2017 WL 2352137 (N.D. Cal. May 31, 2017). In *Kanawi v. Bechtel Corp.*, the plaintiffs alleged the defendants operated the 401(k) plan for the financial benefit of Bechtel's owners, yet summary judgment was granted in the defendants' favor. *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213 (N.D. Cal. Nov. 3, 2008).

Defendants had a series of defenses that were known to Plaintiffs from the outset of the litigation. Defendants would argue that they provided participants with numerous plan investments offering a "range of fees" to TIAA employees. That argument was successful in several dismissals of ERISA 401(k) fee cases. *See Hecker*, 556 F.3d at 586, *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011), and *Loomis v. Exelon Corp.*, 658 F.3d 667, 672 (7th Cir. 2011) (holding that there could be no breach of fiduciary duty when the range of fees in a retirement plan fall within a specific range).

Defendants would also argue that Plaintiffs had "actual knowledge" of the fact that the funds were managed by, and paid fees to, TIAA. Defendants would argue that, as a result, ERISA's shorter 3-year statute of limitations should apply and Plaintiffs' claims should be time-barred.

Defendants would also argue that they had a process to review the investments offered in the Plans, that the funds were no more expensive than similar funds, and

that even if liability were found, damages would be much lower than Plaintiffs argue—or negative.

### 4.   Quality of Representation.

Plaintiffs are represented by three of the most experienced ERISA fiduciary breach attorneys in the country. Gregory Y. Porter has been litigating ERISA fiduciary breach lawsuits since 1998, including representing plaintiffs in similar litigation brought by participants in the Fidelity, Wells Fargo, and Principal Financial employee 401(k) plans. Mark G. Boyko has over a decade of experience representing participants in 401(k) plans alleging fiduciary breach in the selection of plan investment options. He has been involved in ten fiduciary breach cases that have resulted in multi-million dollar judgments and settlement for participants in similar 401(k) plans. His long experience with and wealth of understanding about TIAA funds and CREF annuity products were specifically relevant in this case and immensely valuable to the Class in obtaining this Settlement. Ryan T. Jenny has represented clients in ERISA litigation since 2000 at leading plaintiff and defense law firms in the District of Columbia and New York. Resumes of Counsel are attached to the Declaration of Gregory Y. Porter.

Class Counsel were able to navigate a legal minefield, leveraging their vast experience with similar matters and particular expertise to achieve a positive, lasting, and meaningful benefit to the Class. Class Counsel's ability is perhaps demonstrated by the fact this Class will see monetary benefits and improvements in their Plans when, as discussed above, plaintiffs in many similar recent cases have seen no recovery or plan improvements at all.

### 5.    Requested Fee in Relation to the Settlement.

Although $5 million is a substantial sum, this is not a "case[] that result[s] in a very large monetary award," such that "the percentage method holds the potential to result in attorneys' fees many times greater than those that would have been earned under the lodestar of hourly rate multiplied by hours worked." *McDaniel*, 595 F.3d at 418–19. Counsel's request for one-third of the common fund is "reasonable and consistent with the norms of class litigation in this circuit." *Willix v. Healthfirst, Inc.*, No. 07-1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (collecting cases). Prior to joining this case, each of the named Plaintiffs signed agreements calling for a one-third fee plus costs. *See*, Porter Decl. at ¶ 16.

In ERISA fee litigation specifically, a one-third contingency fee is clearly the market rate. In numerous prior settlements of 401(k) fee cases, class counsel were awarded one-third of the monetary recovery to the plans. *See Bilewicz v. FMR Co.*, No. 13-10636, 2014 WL 8332137, at *6 (D. Mass. Oct. 16, 2014) (approving a one-third fee from a $12 million recovery); *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Spano v. The Boeing Co.,* No. 06-743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Krueger v. Ameriprise Financial*, No. 11-2781, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015); *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014). These fee awards represent a recognition by those courts that one-third of the monetary recovery is appropriate in cases of this type. This Court should reach the same conclusion here.

One-third of the common fund—which is actually much less than one-third of the total *value* of the recovery—is also the appropriate attorneys' fee award here. As observed in a similar ERISA settlement, the court "must also consider the substantial affirmative relief when evaluating the overall benefit to the class." *Beesley*, No. 06-703, 2014 WL 375432 at *1 (citing Manual for Complex Litig., Fourth, §21.71, at 337 (2004)); Principles of the Law of Aggregate Litigation, A.L.I., May 20, 2009, §3.13(b)("a percent-of-the-fund approach should be the method utilized in most common-fund cases, *with the percentage being based on both the monetary and the nonmonetary value of the settlement*")(emphasis added); *cf. Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief").

The fee is imminently reasonable when non-cash benefits to the Class are measured. Defendants have agreed as part of the settlement to: (1) add ten non-proprietary investment options, including five options with investment management fees below 15 basis points, to the Plans; (2) rebate any revenue sharing from these non-proprietary funds to the participants in the Plans; (3) add a "brokerage window" from which Plan participants can access thousands of additional non-proprietary funds; and (4) on a one-time basis, provide Plaintiffs with the proposed changes to the Plan menus including, in the absence of a participant decision to transfer to a different fund, the mapping of replaced fund assets to agreed-upon non-proprietary index products and, where appropriate,

Lifecycle Funds. These agreed-upon plan changes will result in significant fee savings compared to the fees paid during the Class Period. Overall, the Plans and their participants should save over $3 million per year in fees. Declaration of Gregory Y. Porter, ("Porter Decl.") at ¶ 6. If those savings are achieved over 6 years, the fee requested is less than 8% of the value of the settlement.

### 6. Public Policy Considerations.

Protecting workers' retirement funds is a genuine public interest. Public policy relies on private sector enforcement of the pension laws as a necessary adjunct to Department of Labor intervention. Counsel's fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Id.* at 51. While court awarded fees must be reasonable, setting fees too low or randomly will create poor incentives to bringing large class action cases. *See In re Veeco Instruments Inc. Sec. Litig.,* 05 MDL 01695, 2007 WL 4115808, at *3, *8 (S.D.N.Y. Nov. 7, 2007) (citing *Goldberger,* 209 F.3d at 51 (noting the "commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest")). Courts must scrutinize the unique circumstances of each case with "a jealous regard to the rights of those who are interested in the fund," but also provide incentives to bring these cases in the future. *Goldberger*, 209 F.3d at 53.

### B. A lodestar crosscheck confirms the reasonableness of the fee request.

The Second Circuit has expressed concern that using a lodestar cross-check "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to

run up their hours, and compel[s] district court[s] to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Nevertheless, it has allowed for a lodestar cross-check on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50 (citing *General Motors*, 55 F.3d 768, 820 (3d Cir. 1995). The hours so documented "need not be exhaustively scrutinized by the district court," but can instead "be tested by the court's familiarity with the case." *Id*. For purposes of the lodestar cross check, courts often apply a multiplier "by examining such factors as the quality of counsel's work, the risk of the litigation and the complexity of the issues." *In re Fine Host Corp. Sec. Litig.*, No. 97-2619, 2000 WL 33116538, at *6 (D. Conn. Nov. 8, 2000) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)). In that regard, multipliers between 5x and 6x are frequently approved. *In re RJR Nabisco Sec. Litig.*, No. 88-905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) (multiplier of 6x); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (5.3x multiplier); *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (concluding that, under the cross-check approach, a lodestar multiplier in the range of 4.5 to 8.5 was "unquestionably reasonable"); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (5x multiplier); *In re Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (6x multiplier)); *New Eng. Carpenters Health Benefits Fund v. First Databank*, No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) (awarding a fee representing a multiplier of approximately 8.3 times the lodestar).

Here, Class Counsel has already worked 579.7 hours, resulting in a base lodestar of $329,920 to date. Porter Decl. ¶¶ 11–12. The basis for this calculation and the reasonableness of counsel's rates are attested to by the attached declarations. The lodestar multiplier of Plaintiffs' requested fee is 5, within the range of reasonableness.

### C.  Plaintiffs' efforts on behalf of the Class merit the requested service awards.

Plaintiffs request that they be granted a service award in compensation for the time and effort they expended in successfully prosecuting this case to a successful resolution. Service awards acknowledge representative plaintiffs' hard work and sacrifices in support of the class, as well as their promotion of the public interest. Courts around the country allow such awards to named plaintiffs or class representatives. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (recognizing that "incentive awards" for named plaintiffs as high as $35,000 and even $45,000 "are within the range of what other courts have found to be reasonable" (citation omitted)).

In determining whether to approve a service or incentive award, courts in this circuit consider:

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

14

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-1775, 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015) (citations omitted). Here, Plaintiffs seek a modest service award of $5,000 each, which Defendants do not oppose.

Plaintiffs have been closely involved in this litigation since its inception. Plaintiffs provided documents, assisted with the Complaint and Amended Complaint, and monitored Class Counsel and the progress of the litigation, including discussions about the terms of the Settlement. Most importantly, Plaintiffs willingly put themselves forward in litigation against their former employer regarding their personal finances. *Beesley*, 2014 WL 375432, at *4 (risks of acting as named plaintiff in ERISA action include "alienation from employers or peers"). In recognition of her selfless service, the requested award is reasonable.

The total award for all named plaintiffs represents just 0.1% of the total Settlement Fund. Substantially larger named plaintiff awards have been approved as well within the ranges that are typically awarded in comparable cases. *See*, *e.g.*, *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 1113291, at *21 (W.D. Mo. Nov. 2, 2012) (awarding $25,000 to each class representative in ERISA 401(k) fee class action); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (upholding award of $25,000 to class representative); *Beesley*, , 2014 WL 375432, at *4 (awarding $25,000 to each of the three named plaintiffs); *Nolte v. Cigna Corp.*, Case No. 07-2046, Doc. 413 at 9 (C.D. Ill. Oct. 15, 2013) (same); *Will v. Gen. Dynamics Corp.,* No. 06-698, Doc. 253 at 26 (S.D. Ill, Nov. 4, 2010) (same).

### D. The Court should also award reimbursement of Class Counsel's costs.

Reimbursement of the substantial litigation expenses that Counsel advanced in prosecuting this case is also warranted. Fed. R. Civ. P. 23(h). As a leading treatise states:

> An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved. The equitable principle that all reasonable expenses incurred in the creation of a fund for the benefit of a class are reimbursable proportionately by those who accept benefits from the fund authorizes reimbursement of full reasonable litigation expenses as costs of the suit in contrast to the more narrowly defined rules of taxable costs of suit under Fed. R Civ. P. 54 (d).... The prevailing view is that expenses are awarded in addition to the fee percentage.

Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.); *see also Sprague v. Ticonic*, 307 U.S. 161, 166-67 (1939) (recognizing a federal court's equity power to award costs from a common fund); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("In accordance with the well-established common fund exception to the American Rule, …class counsel…are entitled to an award of their…expenses out of the fund that has been created for the class by their efforts").

Counsel in common fund cases may recover those expenses that would normally be charged to a fee paying client. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). "Reducing litigation expenses because they are higher than the private market would permit is

fine; reducing them because the district judge thinks costs too high in general is not." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001).

Reimbursable expenses include many litigation expenses beyond those narrowly defined "costs" recoverable from an opposing party under Rule 54(d), such as: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research. *Anwar v. Fairfield Greenwich Ltd.*, No. 09-118, WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Plaintiffs' Counsel seek reimbursement for expenses such as mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type 'the paying, arms' length market' reimburses attorneys."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred-which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review are the type for which "the paying, arms' length market" reimburses attorneys. For this reason, they are properly chargeable to the Settlement.").

Counsel brought this case without guarantee of reimbursement or recovery, so they had a strong incentive to keep costs to a reasonable level, and they did so. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (recognizing that counsel with contingent fee agreement has a "strong incentive to keep expenses at a reasonable level"). However, given the relatively early settlement, the costs incurred were contained. An empirical study of the costs awarded in class action litigation found that the average cost award was equal to 4% of the relief obtained

for the class. *See* Theodore Eisenberg and Geoffery P. Miller, *Attorney Fees in Class Action Settlements: an Empirical Study*, 1 J. of Empirical Legal Studies 27, 70 (2004). This study suggests that "requests falling within one standard deviation above or below the mean should be viewed as generally reasonable." *Id*. at 74. The total amount of costs here, although substantial, is equal to just 1 percent of the total recovery; well within the range to be considered "generally reasonable."

A description of these costs and expenses, broken down by category, is contained in the attached Declaration of Gregory Y. Porter. The costs and expenses are the types of costs and expenses that are routinely reimbursed by paying clients, such as experts' fees, travel, mediation fees, and photocopying costs. Porter Decl., ¶ 7. By far the largest expenses were expert, mediation, and travel expenses. The expert fees were critical both to the early evaluation of the case pre-filing, and the preparation for mediation, including damages analyses. Class Counsel has incurred these expenses over the course of over two years. In light of the length and complexity of this litigation, Counsel's request for reimbursement of costs and expenses should be approved as fair and reasonable.

## III.   Conclusion

For these reasons, Plaintiffs request that the Court approve a fee award of $1,666,666 and a cost award of $58,883.39 to Class Counsel, Bailey & Glasser, LLP, and service awards of $5,000 to each of the named plaintiffs: Cynthia Richards-Donald and Michelle DePrima.

Dated:  June 26, 2017

Respectfully submitted,


/s/ Gregory Y. Porter
Gregory Y. Porter, *pro hac vice*
Ryan T. Jenny, *pro hac vice*
Mark G. Boyko, *pro hac vice*
Bailey & Glasser LLP
1054 31st Street, NW
Washington, DC 20007
Telephone:  (202) 463-2101
Facsimile:  (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com
mboyko@baileyglasser.com


Kevin Barrett
Bailey & Glasser LLP
137 Betsy Brown Road
Port Chester, NY 10573
Telephone:  (646) 776-8580
kbarrett@baileyglasser.com


Major Khan
Major Khan LLC
1120 Avenue of the Americas
Suite 4100
New York, NY 10036
Telephone:  (646) 546-5664
Facsimile:  (646) 546-5755
mk@mk-llc.com


*Attorneys for Plaintiffs*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2017, a true and correct copy of the foregoing was served upon all counsel of record by operation of this Court's CM/ECF system.

/s/ Gregory Y. Porter
Gregory Y. Porter